UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DONALD AND MARGARET VEILLEUX, | ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | 1:13-cv-00029-NT |
| GENIE INDUSTRIES, | ) ) ) | |
| Defendant. | ) | |

## AMENDED RECOMMENDED DECISION [1]

In this action, Plaintiffs Donald and Margaret Veilleux seek to recover damages for injuries allegedly resulting from the defective condition of an elevated work platform manufactured by Defendant Genie Industries. The matter is before the Court on Defendant's Motion for Partial Summary Judgment (ECF No. 34).[2] Following a review of the pleadings and Local Rule 56 statements, and consideration of the parties' arguments, as explained below, the recommendation is that the Court deny the motion.

### BACKGROUND FACTS

Defendant Genie Industries, Inc. ("Genie") is a corporation that sells commercial and industrial equipment. Genie manufactured and sold the subject Easy-Up 15M personnel lift to a dealer in New Hampshire, which dealer subsequently sold it to Waterville Regional Vocational Center. (DSF ¶¶ 1-2; POSF ¶ 2.) [3]

---

[1] The Recommended Decision inadvertently referred to "Plaintiffs' argument" in the second full paragraph of page 8. The Recommended Decision is amended to reference "Defendant's argument."
[2] The Court referred the motion for report and recommended decision.
[3] Defendant's Statement of Facts (ECF No. 35) and Plaintiffs' Opposing Statement of Facts (ECF No. 37).

To secure the platform for the operator to stand on it, the operator rotates the platform and guardrail to a vertical position and locks this complete "basket assembly"[4] into place with two pins or latches. Plaintiff Donald Veilleux testified that the purpose of the latches is to hold the basket assembly "straight up." The process of rotating and locking the basket assembly in place reinforces for the operator the process by which the basket assembly would be lowered, which process requires a user to disengage the pins using the lift's red toggle clamps, allowing the basket assembly to rotate down to a horizontal position. (DSF ¶¶ 3-5.)

On the lift, directly between the two pins, is a yellow caution decal stating:

**CAUTION**

**BEFORE ENTERING** LOCK PLATFORM RAILING IN UPRIGHT POSITION

**WHEN UNLOCKING,** KEEP ONE HAND ON RAILING AT ALL TIMES

(*Id.* ¶ 6.)

Plaintiff Donald Veilleux worked for the Waterville School Department in Waterville, Maine from 1994 to 2010. On the morning of July 12, 2010, while working alongside his son, Matthew Veilleux, at Mid-Maine Tech Center, Mr. Veilleux was required to remove paper from and clean a recently installed skylight. Mr. Veilleux and his son retrieved the Genie lift, brought it to the atrium in which the skylight was located, and raised it to the skylight windows. This was the first time Mr. Veilleux used the lift and he had not received any training regarding its use. (*Id.* ¶¶ 9-12; DOSF ¶ 9.)

Another school employee, Dwight Barron, instructed Mr. Veilleux and his son that the lift's outriggers needed to be installed for stability purposes, and that after the platform was in

---

[4] Rather than the parties' use of the term "platform," the Operating Instructions (ECF No. 35-4) describe the component locked into position by the pins as the "basket" or "basket assembly." The basket assembly has a platform to stand on and includes a guardrail. A good visual depiction is in the Operating Instructions. (*Id.* at 10-11, 13.)

2

place, they could climb onto the lift and elevate the lift. After Mr. Barron left the scene, Mr. Veilleux and his son finished setting up the unit. As part of this process, Mr. Veilleux rotated the basket assembly to the vertical position and double-checked that its two locking pins were secured before he entered it. Mr. Veilleux then entered the basket and Matthew Veilleux used the winch to elevate the platform. Mr. Veilleux used the Genie lift to clean the first skylight without issue, but needed to fold the basket down in order to move the lift to a second skylight that needed cleaning. (DSF ¶¶ 14-18.)

After descending from the platform, Mr. Veilleux stood on the ground facing the platform where two latches – one to his left and one to his right – were located. He first released the right latch using one hand. He then placed his right hand on the basket's base and attempted to release the left latch with his left hand. Because he had difficulty doing so, he removed his right hand from the base and placed both hands on the left latch to attempt to release it. When he released the left latch, the basket descended and struck him on the head. (*Id.* ¶¶ 20-23.)

Mr. Veilleux never read any of the warnings or instructions affixed to the lift. He also did not read the warnings on any of the other equipment that he used at the facility. (*Id.* ¶¶ 24-25; POSF ¶ 25.) In addition, Matthew Veilleux did not read the warnings or instructions on the lift. (DSF ¶ 26.) At his deposition, Plaintiffs' liability expert, Steven Thomas, P.E., testified that the caution decal does not satisfy the applicable ANSI standard (Z35.1) because the decal does not identify a specific hazard. (*Id.* ¶¶ 28-29.)

Defendant Genie asserts that because Mr. Thomas failed to express criticism concerning the prominence or conspicuity of the warning, Plaintiffs cannot prevail on their product liability claim based on an allegation that the warning was not conspicuous. (*Id.* ¶ 27.)[5] Plaintiffs contend

---

[5] In support of its argument, Defendant cites the following testimony of Mr. Thomas:

that the mere fact that Defendant did not ask more extensive or more probing questions at Mr. Thomas's deposition does not preclude Mr. Thomas from testifying as to opinions that were fairly included in Plaintiffs' expert witness designation. Plaintiffs maintain that Mr. Thomas will testify that the warning was inadequate due to its appearance (i.e., a lack of prominence and conspicuity). (POSF ¶ 27; Affidavit of Steven R. Thomas, P.E. ¶¶ 4-5, 8, 10-11, ECF No. 38-3.) Through his affidavit, Mr. Thomas identified examples of an adequate warning.

Defendant argues that the Court should strike and disregard Mr. Thomas's affidavit because it includes opinions that were not disclosed in accordance with the Court's Scheduling Order. (PRSF at 1-5, ¶ 2.) [6] Defendant also contends that Mr. Thomas's affidavit constitutes a change in his testimony that is designed to defeat summary judgment, which change is impermissible at this stage of the proceedings. (*Id.* at 6, citing *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994)).

According to Plaintiffs, Mr. Thomas's Rule 26 designation encompasses Mr. Thomas's opinion regarding the inadequate presentation of the warning particularly given his reference to

---

       Q. Where, if anywhere, is language in that standard that you rely on with respect to your opinion regarding inadequate warnings or instructions?

       A. Well, it is – the two sections which I have identified as being specifically related to, I have already read into the record from page 7 and the first one is that the hazard should be eliminated but if you can't eliminate them, you must provide a warning. And the second is in paragraph 1.1 that the signs are intended to indicate hazards in the environment and provide information so that the injury or property damages resulting from these hazards may be avoided. I feel that this does not meet this standard because the language of the warning that you have just identified does not identify the specific hazard that we have.

       Q. Anything else that you would like to state with respect to your basis that this standard was violated by Genie with respect to the caution warning?

       A. No.

(Thomas Deposition at 52-53, ECF No. 35-9 at 5-6.)

[6] Defendant's Reply Statement of Facts (ECF No. 43).

the fact that the warning label did not comply with the standards for the industry promulgated by the American National Standards Institute (ANSI). (PASF ¶ 2.) [7] The designation states, in part:

> u)  Upon the identification of such hazards, reasonable engineering practice and written engineering standards required that the designer should, in the following order, alter the design to eliminate the hazard where possible, provide guarding or other protections from any hazards that could not be eliminated, and, if the hazard is inherent and not obvious, provide warnings and instructions to allow the user to avoid the hazard;
>
> v)  ANSI Z35.1 entitled "specifications for accident prevention signs" was applicable to the EU-lS lift as of the time it was designed, manufactured, and sold. In the introduction, the ANSI Z35.1 standard states, "Hazards should be eliminated wherever possible, but if they cannot be eliminated, the employee should be informed of the hazard by signs posted to give warning" . . .
>
> Plaintiff expects Mr. Thomas to testify that the warnings and instructions provided with the Genie Model EU-15 "Easy-Up" elevated work platform were inadequate and not designed in accordance with reasonable engineering practice.
>     a) Warnings intended to mitigate a hazard in the use of a product must incorporate specific features in order to be effective;
>     b) These features include providing information defining the hazard and the methodology to be used in its avoidance;
>     c) The Operating Instructions Manual for the subject Genie platform did not address the hazards associated with lowering the guardrail assembly or how to avoid same;
>     d) The only warning provided stated, "WHEN UNLOCKING, KEEP ONE HAND ON RAILING AT ALL TIMES";
>     e) This warning does not identify the hazard to be avoided, or why a hand should be kept on the "RAILING";
>     f) A reasonable warning would be, "WARNING"-"TO PREVENT THE GUARDRAIL FROM FALLING ON YOU"-"SUPPORT THE GUARDRAIL WITH ONE HAND WHEN UNLOCKING".
>
> The EU-15 was defective and unreasonably dangerous in design and in the inadequacy of the instructions and warnings provided with it. The actions of Mr. Veilleux leading up to his injury were foreseeable. Genie acted unreasonably in failing to properly review the EU-15 design, failing to eliminate the hazard inherent in the folding guardrail design, and in designing inadequate instructions and warnings for use with the EU-15. The risks and dangers inherent in the EU-15 design, instructions and warnings outweighed their utility, and outweighed the utility of the lift in its defective condition. The defects in the EU-15 and the unreasonable conduct of Genie were substantial contributing factors in causing Mr. Veilleux to be struck on the head with substantial force by the falling railing.

---

[7]  Plaintiffs' Additional Statement of Facts (ECF No. 37).

> In the event that [ ] new materials and information may become available and to the extent that any additional information reviewed and relied upon changes Mr. Thomas['s] opinions, this designation will be revised.

(Designation of Steven Thomas, P.E., ECF No. 38-1.)

Plaintiffs assert, and Mr. Thomas asserts, that if counsel had asked about the parts of the designation dealing with the label, Mr. Thomas would have testified that it did not comply with industry standards and was entirely inadequate from an engineering and human factors point of view to warn a workman of the nature and seriousness of the hazard. (PASF ¶ 6.)[8]

In his affidavit, Mr. Thomas explains that the purpose of having standardized warnings as contemplated by ANSI standard Z35.1, which was in effect at the time this product was

---

[8] They also assert that if Mr. Thomas had been asked at the deposition to sketch out what a warning consistent with his Rule 26 designation would look like, he would have sketched for the questioning attorney a label consistent with one of the following suggested warnings:

 

Or:

 

(PASF ¶¶ 8-9; Drawing Exhibit, ECF No. 38-2; Warning Signs Exhibit, ECF No. 38-3.)

manufactured in 1986, is that workers in the field come to recognize the distinctive colors, words and configuration which alert them of hazards around them. He further explained that the ANSI standards required that labels warning of the particular hazard that caused Mr. Veilleux's injury must be consistent with or have a similar appearance to the warning labels that he proposed. (PASF ¶¶ 10-13; Thomas Affidavit ¶¶ 12-14.)

Defendant Genie Industries admits that it agreed with and adopted the ANSI standards as technical standards applicable to its product design and product manufacture. (PASF ¶ 22.)

## DISCUSSION

Defendant moves for summary judgment on Plaintiffs' product liability claim based upon Defendant's alleged failure to warn. Defendant also asks the Court to strike Mr. Thomas's affidavit.

### A.  Defendant's Request to Strike

Defendant requests that Mr. Thomas's opinion concerning the warning's inconspicuous nature be stricken because the affidavit: (1) is conclusory, self-serving and unsupported; (2) contradicts prior testimony; and (3) was not disclosed timely. (DRSF at 2-6.)

#### 1.  *Conclusory, self-serving, and unsupported*

Defendant's assertion that Mr. Thomas's affidavit testimony concerning the colors, graphic content, and wording of an appropriate warning is inherently unreliable is unpersuasive. Mr. Thomas's testimony on this issue is logical, readily comprehensible, and sufficient to support the opinions asserted therein. The opinions in the affidavit are also supported by independent evidence consisting of the applicable ANSI standard. Notably, Mr. Thomas's designation included references to ANSI standard Z35.1, which specifies design standards for warning signs, including layout, language, and color schemes. (ECF No. 38-4.)

### 2. *Contradictory testimony / failure to disclose*

"When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994). According to Defendant, Mr. Thomas, "consistent with his designation, limited his criticism of the warning to its content and testified that he had no further opinions with respect to its adequacy." (DRSF at 7.)

Contrary to Defendant's argument, Mr. Thomas's affidavit testimony does not contradict his deposition testimony. At best, the affidavit supplements Mr. Thomas's deposition testimony. Not insignificantly, while the opinions in the affidavit might supplement Mr. Thomas's deposition testimony, the opinions are fairly within the scope of Plaintiffs' designation of Mr. Thomas as an expert witness. Insofar as Plaintiffs' designation contains specific reference to ANSI standard Z35.1, which includes reference to a warning's appearance, Plaintiffs' designation was sufficient to notify Defendant of the opinions set forth in Mr. Thomas's affidavit. Accordingly, the fact that Mr. Thomas did not testify at his deposition to the conspicuity issue does not preclude him from offering his opinion on the issue. Defendant's request to strike, therefore, is denied.[9]

### B. Defendant's Motion for Partial Summary Judgment

### 1. *Summary judgment standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "After the moving party has presented evidence in support of its motion for summary

---

[9] Because the fact that Mr. Thomas did not testify specifically at his deposition regarding the conspicuity issue is arguably the result of a miscommunication or misunderstanding, Defendant is authorized to depose Mr. Thomas on the issue despite the fact that the discovery period has closed.

judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).

The Court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Hannon v. Beard*, 645 F.3d 45, 47-48 (1st Cir. 2011). If the Court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of his claims, then there is a trial-worthy controversy and summary judgment must be denied to the extent there are supported claims. Unsupported claims are properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

*2. Discussion*

Defendant asserts that Plaintiffs cannot establish that an inadequate warning proximately caused Mr. Veilleux's injuries because Mr. Veilleux testified that he did not read the warning provided and has not read warnings on products in other situations, either. (Motion for Partial Summary Judgment at 1, 8-15.)[10]

In a failure to warn claim, the issues are: "(1) whether the defendant held a duty to warn the plaintiff; (2) whether the actual warning on the product, if any, was inadequate; and (3) whether the inadequate warning proximately caused the plaintiff's injury." *Pottle v. Up-Right, Inc.*, 628 A.2d 672, 675 (Me. 1993). Defendant challenges Plaintiffs' ability to carry their burden on the

---

[10] In part, Defendant argued that Defendant should prevail on summary judgment because Plaintiffs could not rely on the conspicuity issue in support of their liability claim. Because that issue was addressed in the context of Defendant's request to strike the affidavit of Mr. Thomas, the issue is not discussed separately at this point of the analysis.

9

third element of their failure to warn claim. "Causation is . . . a question of fact, requiring proof that there is some reasonable causal connection demonstrated in the record between the act or omission of the defendant and the damage that the plaintiff has suffered." *Estate of Smith v. Cumberland Cnty.*, 2013 ME 13, ¶ 17, 60 A.3d 759, 763 (discussing causation in the context of a negligence claim).

Given the testimony of Mr. Thomas and Mr. Veilleux[11], a reasonable fact finder could conclude that had Defendant's warning satisfied the applicable standard as to size, color and content, Plaintiff likely would have read the label and acted in accordance with the label's instructions. Although Mr. Veilleux did not read other warnings, one cannot conclude as a matter of law that Mr. Veilleux would not have read a warning as prominent as the warning that Plaintiffs' expert maintains was required. Indeed, in support of its contention that the warning was adequate, Defendant points out that the warning was directly in front of Mr. Veilleux when he was attempting to lower the platform. A fact finder thus could conclude that Mr. Veilleux would have seen and read the warning. Under the circumstances, therefore, a factual issue remains in dispute as to whether the alleged inadequacy of the warning proximately caused Plaintiffs' damages.

## CONCLUSION

Based on the foregoing analysis, Defendant's request to strike is denied. In addition, the recommendation is that the Court deny Defendant's Motion for Partial Summary Judgment (ECF No. 34).

---

[11] Defendant also requested that the Court strike additional statements supported by the Affidavit of Plaintiff Donald Veilleux, in which affidavit Mr. Veilleux states that he would have noticed and read a warning of the kind Mr. Thomas is proposing because it would have caught his attention. (PSAF ¶¶ 15-21; Affidavit of Donald Veilleux ¶¶ 2-6, ECF No. 39.) Mr. Veilleux's averments reinforce Mr. Thomas's expert opinion about the significance of the visual difference between the actual warning and the proposed warnings. The Court perceives no reason to strike Mr. Veilleux's affidavit. The Court thus denies Defendant's request to strike Plaintiff's affidavit.

# NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

June 10, 2014